UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN CARLOS RESTREPO-SUARES,<br>aka JUAN CARLOS RESTREPO-SUAREZ<br>aka BARBAS<br><br>Defendant. | Criminal Action No. 04-034-06 (JDB)<br>Civil Action No. 07-0450 (JDB) |

### MEMORANDUM OPINION

This case is before the Court on defendant's motion to vacate and correct his sentence pursuant to 28 U.S.C. § 2255. Defendant pled guilty to a conspiracy, continuing from January 1994 to January 2004, to import, manufacture, and distribute cocaine in violation of 21 U.S.C. §§ 952(a), 959, 963 and 960(b)(1)(B)(ii), as charged in Count One of the indictment. He was sentenced on January 31, 2007 to 72 months imprisonment -- at the low end of the advisory range of 70 to 87 months recommended by the United States Sentencing Guidelines ("Guidelines"). At that time, the government and defendant accepted the conclusion in the Presentence Investigation Report, prepared by the U.S. Probation Office, that the 2006 version of the Guidelines applied. See Order at 2-3 (filed Feb. 21, 2007). In the weeks thereafter, in preparation for the sentencing of co-defendant Hernando Rendon Rivera, the Court concluded that application of the current 2006 Guidelines "conceivably raise[d] an ex post facto issue by establishing an 'advisory' . . . . sentencing range" that exceeded the range under the 2003 Guidelines -- the version in effect at the time of the offense conduct. Id. at 2-3. Lacking jurisdiction to modify the sentence under Fed. R.

Crim. P. 35, the Court then <u>sua sponte</u> extended the time within which defendant was authorized to file a notice of appeal to preserve defendant's ability to pursue the issue. <u>Id.</u> at 6. Defendant filed a notice of appeal and, simultaneously, sought relief under 28 U.S.C. § 2255 on the ground that the "correct range" for sentencing is the lower range recommended by the 2003 Guidelines -- 46 to 57 months. The government has represented that it consents to a resentencing hearing, but does not consent to a new sentence, and has not taken a position on whether retroactive application of the 2006 Guidelines violates the ex post facto clause. In considering defendant's contention that application of the 2003 Guidelines is required, the Court also has received memoranda from co-defendants Rendon Rivera and Wilson de Jesus Villegas-Jaramillo, who are awaiting sentencing on the same count of the indictment and are similarly situated in terms of their offense level calculations.

## STANDARD OF REVIEW

Section 2255 authorizes the sentencing court to discharge or resentence a prisoner if the court concludes that it was without jurisdiction to impose the sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; <u>United States v. Addonizio</u>, 442 U.S. 178, 185 (1979). A "constitutional error" or other "objectively ascertainable error" resulting in a "complete miscarriage of justice" are grounds for collateral attack. <u>See</u> <u>Addonizio</u>, 442 U.S. at 185-87; <u>Winchester v. United States</u>, 477 F. Supp. 2d 81, 83 (D.D.C. 2007). The movant bears the burden of proving his contentions by a preponderance of the evidence. <u>United States v. Simpson</u>, 475 F.2d 934, 935 (D.C. Cir. 1973); <u>Winchester</u>, 477 F. Supp. 2d at 83.

## ANALYSIS

**I.    Jurisdiction**

The Court first considers whether it has the authority to resolve defendant's motion for resentencing while his direct appeal of the sentence is pending.  Ordinarily, the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam); see also Johnson v. Bechtel Associates Professional Corp., 801 F.2d 412, 415 (D.C.Cir.1986) (per curiam) (holding that the district court does not regain jurisdiction over those issues until the court of appeals issues its mandate).  However, this Circuit has held that "there is no jurisdictional bar to the District Court's entertaining a Section 2255 motion during the pendency of a direct appeal, but that the orderly administration of criminal law precludes considering such a motion absent extraordinary circumstances." Womack v. United States, 395 F.2d 630, 631 (D.C. Cir. 1968); United States v. Edmonds, 870 F. Supp. 1140, 1143 n.3 (D.D.C. 1994), aff'd, 84 F.3d 1453 (D.C. Cir. 1996).  The D.C. Circuit has further noted that the requirement of "extraordinary circumstances" is not immutable, stating that "Womack is a rule of administrative convenience which should not be uncompromisingly applied to effect an unfair result." United States v. Tindle, 522 F.2d 689, 693 n.10 (D.C. Cir. 1975).

Here, the court of appeals has granted defendant's motion to hold his appeal in abeyance "pending resolution" of his motion for relief under 28 U.S.C. § 2255 "in light of the district court's order . . . indicating that [Restrepo-Suares] may be entitled to a recalculation of his advisory guideline range." See Order (D.C. Cir. Aug. 13, 2007).   That Order thus indicates that the court of appeals intends to have this Court resolve the § 2255 motion while the appeal is pending. In

light of Tindle and the stay of appellate proceedings, then, the Court concludes that the orderly administration of law not only authorizes, but necessitates, resolving defendant's motion, notwithstanding the general requirement that extraordinary circumstances must first be demonstrated before such a motion is considered.  See Edmonds, 870 F. Supp. at 1143 n.3 (resolving § 2255 motion during pendency of appeal in light of similar stay of appellate proceedings).  Any actual resentencing, of course, must await a remand from the court of appeals. See Womack, 395 F.2d at 631 n.1; Smith v. Pollin, 194 F.2d 349, 350 (D.C. Cir. 1952) (observing that a § 2255 movant must make a motion for remand in the appellate court before the district court may grant full relief under § 2255 where relief would encompass a new trial).

## II.     Determination of the Correct Guidelines Range

### A.     Defendant's Total Offense Level Under the 2006 Guidelines and the 2003 Guidelines

In its February 21, 2007 Order, the Court described the Guidelines provisions giving rise to its concern that retroactive application of the 2006 Guidelines to defendant implicates the ex post facto clause.  At the time of sentencing, defendant's "base offense level" was determined to be 34 pursuant to USSG § 2D1.1(a)(3) and (c)(1) -- that is, an initial base offense level of 38 and a four-level downward adjustment based on defendant's mitigating role.  The application of the 2006 Guidelines was recommended by the Presentence Investigation Report and stipulated to by the parties.  See Def.'s Presentence Mem. [ECF #74] at 1 ("Our primary application is for the Court to sentence the defendant to no more than 70 months in prison, which is at the bottom of the stipulated advisory Guidelines range."); Government's Receipt and Acknowledgment of Presentence Investigation Report [ECF #75] at 1 ("There are no material/factual inaccuracies therein.").  After adjustments based on the "safety valve" provision (USSG § 5C1.2), role in the

offense, and acceptance of responsibility, the Court concluded that defendant's total offense level was 27, and that with a criminal history category of I, the advisory Guidelines range was 70 to 87 months.[1]  The Court relied on this advisory range and other factors under 18 U.S.C. § 3553(a) in imposing the sentence of 72 months.

Under the 2003 Guidelines, however, the base offense level for the same offense under the same Guidelines section is 30.[2]  See  USSG § 2D1.1(a)(3) ("the base offense level under this subsection shall be not more than level 30" where the defendant is determined to have a "mitigating role").  In other words, for defendant Restrepo-Suares -- and his similarly situated co-defendants Rendon Rivera and Villegas-Jaramillo -- the version of the Guidelines that is applied makes a significant difference in the advisory sentencing range because, under the 2003 Guidelines, his base offense level would be four levels lower (30 rather than 34).  Put another way, the advisory sentencing range under the 2003 Guidelines would be 46 to 57 months (based on a total offense level of 23), in contrast to 70 to 87 months (based on a total offense level of 27) under the 2006 Guidelines.

B.     **Impact of the Ex Post Facto Clause on the Guidelines Range**

Section 1B1.11(a) of the 2006 Guidelines, like prior versions, specifies that: "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."  But § 1B1.11(b)(1) then states that if use of the current manual "would violate the ex post facto clause

---

[1]  Rendon Rivera and Villegas-Jaramillo are eligible for the same adjustments and, under the 2006 Guidelines, also would face an advisory range of 70 to 87 months, based on a total offense level of 27.

[2] The 2003 Guidelines were issued in November 2003 and were in effect at the time of the offense conduct.

of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." The import of this provision under a mandatory Guidelines regime, before United States v. Booker, 543 U.S. 220 (2005), was relatively clear: an amendment to the Guidelines that occurred after the commission of an offense could not be applied to a defendant if it worked to the detriment of the defendant. See United States v. Gonzalez, 281 F.3d 38, 45-46 (2d Cir. 2002); see also Miller v. Florida, 482 U.S. 423, 429-32 (1987). After Booker, however, there have been divergent views on whether the Guidelines, now "advisory," present the same problem, as this Court observed in the Order initially describing this issue:

> Whether, after Booker, application of the current Guidelines can conceivably raise an ex post facto issue by establishing an "advisory" increased sentencing range has been the subject of some discussion. Compare United States v. Demaree, 459 F.3d 791, 795 (7th Cir. 2006) (rejecting defendant's claim that use of an increased advisory guidelines range is an ex post facto violation with respect to a crime committed before the change, concluding that the ex post facto clause "applie[s] only to laws and regulations that bind rather than advise"), [cert. denied, 127 S. Ct. 3055 (2007),] with United States v. Safavian, 461 F. Supp. 2d 76, 82-83 (D.D.C. 2006) (discussing principles underlying ex post facto clause, and concluding that, even in an advisory Guidelines regime, "[t]o apply the revised Guideline would violate the ex post facto clause because it places [defendant] at a disadvantage under the Guidelines without providing fair warning"); United States v. Kingsbury, 2006 WL 2575484, at *3 (D. Me. Sept. 1, 2006) (observing that "[t]o analyze the ex post facto issue, the weight the sentencing court is required to give the Guidelines could well be significant"); and United States v. Kandirakis, 441 F. Supp. 2d 282, 335 (D. Mass. 2006) (observing that "were the Guidelines truly 'advisory,' [defendant's] argument [alleging an ex post facto clause violation] would lose much of its force," but declining to apply post-conduct Guidelines because the court "is required to give substantial weight to the Guidelines").

See Order at 4 (filed Feb. 21, 2007).

Since the issuance of that Order, the Court has received supplemental briefing from all affected defendants. Each contends that the advisory Guidelines continue to present ex post facto concerns, notwithstanding their non-binding nature, because courts are required to give substantial

weight to the Guidelines, which thus increases the likelihood that defendants will be sentenced within the revised (and here, increased) range.[3] See Villegas-Jaramillo's Sentencing Mem. at 2-3; Rendon Rivera's Sentencing Mem. at 4-5. Defendants acknowledge that the Seventh Circuit in Demaree rejected the position that non-binding guidelines can violate the ex post facto clause, but urge that Demaree should not be followed in light of the recognition by other courts -- including Safavian, Kingsbury, and Kandirakis, supra -- that applying a higher advisory Guidelines range places a defendant at risk of an increased sentence. They also note that other circuits have suggested that retroactive application of the Guidelines, even under an "advisory" label, presents ex post facto concerns, albeit with no analysis of the issue. See United States v. Austin, 479 F.3d 363, 367 (5th Cir. 2007) ("to avoid ex post facto concerns, the court uses the Guidelines yielding the lesser penalty"); United States v. Gilman, 478 F.3d 440, 449 (1st Cir. 2007) (expressing doubt about the precedential value of Demaree in the First Circuit but declining to resolve the ex post facto issue).

Those cases, collectively, are useful in describing the nature of the disadvantage suffered by a defendant under even an advisory Guidelines regime, but they do not squarely confront the threshold issue of whether a non-binding guideline can, in the first instance, present an ex post facto violation. The resolution of that issue must be determined instead by reference to the decisions of this Circuit in Fletcher v. District of Columbia, 391 F.3d 250 (D.C. Cir. 2004), and Fletcher v. Reilly, 433 F.3d 867 (D.C. Cir. 2006). Those cases held that, under Garner v. Jones,

---

[3] Defendants also contend that the presumption of reasonableness given to a sentence within a Guidelines range increases the likelihood of sentencing within that range. The Supreme Court has recently clarified, however, that the presumption of reasonableness is only an "appellate court presumption," and that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." United States v. Rita, --- U.S. ---, 127 S. Ct. 2456, 2465 (2007). Hence, this aspect of defendants' argument merits no further discussion.

529 U.S. 244 (2000), a "non-binding" regulation -- there, in the parole context -- may violate the ex post facto clause if its retroactive application creates a "'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Fletcher v. District of Columbia, 391 F.3d at 251 (quoting Garner, 529 U.S. at 250). The court of appeals construed Garner to "foreclose[] [a] categorical distinction between a measure with the force of law and guidelines [that] are merely policy statements from which the [decisionmaker] may depart in its discretion." Id. (internal quotation marks and citation omitted)  Thus, in this Circuit at least, an advisory guideline is not exempt from ex post facto analysis simply because of its non-binding status. As the court of appeals explained in Fletcher v. Reilly:

> The labels "regulation" and "guideline" are not determinative. And the existence of discretion is not dispositive. The controlling inquiry under Garner is how the [decisionmaker] exercises discretion in practice, and whether differences between the exercise of discretion in two systems actually "create[] a significant risk of prolonging . . . incarceration.

433 F.3d at 876-77. Demaree's contrary holding that "the ex post facto clause should apply only to laws and regulations that bind rather than advise" (459 F.3d at 795) is squarely at odds with the Fletcher cases, and in this Circuit, it is Fletcher that must be followed. See also Michael v. Ghee, 498 F.3d 372, 383-84 (6th Cir. 2007) (recognizing the contrasting approaches of Demaree and the Fletcher cases on whether non-binding regulations are subject to the ex post facto clause, and following the Fletcher cases); Glascoe v. Bezy, 421 F.3d 543, 548 (7th Cir. 2005) (recognizing the disagreement between Seventh and D.C. Circuits on whether non-binding parole regulations are subject to the ex post facto clause).

Having concluded that an advisory guideline, as a general matter, is subject to scrutiny under the ex post facto clause, the Court still must consider whether application of the 2006 Guidelines would result in an ex post facto violation based on the "significant risk" standard

articulated in <u>Garner</u> and the <u>Fletcher</u> cases. The Court concludes that it does. Those cases instruct the court to look at "evidence drawn from the rule's practical implementation" to determine whether there is a "significant risk" that "retroactive application will result in a longer period of incarceration than under the earlier rule."[4] <u>Garner</u>, 529 U.S. at 255, <u>quoted in</u> <u>Fletcher v. Reilly</u>, 391 F.3d at 251. The U.S. Sentencing Commission has reported that after <u>Booker</u> -- that is, in both fiscal year 2006 and the first half of fiscal year 2007 -- over 61 percent of sentences still fall within the Guidelines range, and that downward departures reflected primarily government sponsored motions under Section 5K. <u>See</u> U.S. Sentencing Commission Final Quarterly Data Report, Fiscal Year 2006, Table 1 (reporting 61.7 percent of sentences within Guidelines range, 24.6 percent "government sponsored" below range, and 12.0 percent non-government sponsored below range) (available at www.ussc.gov/sc_cases/USSC_Quarter_Report_Final_06.pdf) ("Fiscal Year 2006 Report"); U.S. Sentencing Commission Preliminary Quarterly Data Report, 2nd Quarter Release, Preliminary Fiscal Year 2007 Data, Table 1 (reporting 61.5 percent of sentences within Guidelines range, 25.1 percent "government sponsored" below range, and 12.0 percent non-government sponsored below range (available at www.ussc.gov/sc_cases/Quarter_Report_2Qrt_07.pdf) ("Preliminary Fiscal Year 2007 Quarterly Data Report").[5]

---

[4] <u>Garner</u> and <u>Fletcher v. Reilly</u> contemplate that discovery will be necessary, at least in the parole context, to give the movant an opportunity to obtain evidence regarding the practical implementation of the challenged guideline. <u>See</u> <u>Garner</u>, 529 U.S. at 257; <u>Fletcher v. Reilly</u>, 433 F.3d at 879. Defendant does not seek discovery here, nor would it be practicable in this context, where hundreds of individual judges -- rather than a single parole agency -- are deciding the duration of incarceration, and the sentencing data is already widely available through the U.S. Sentencing Commission.

[5] The Commission also reports that, within the D.C. Circuit, 52 percent of sentences fell within the Guidelines range during fiscal year 2006, and 42.1 percent fell within the Guidelines range during the first half of fiscal year 2007. <u>See</u> Fiscal Year 2006 Report, Table 2; Preliminary Fiscal Year 2007 Quarterly Data Report, Table 2. The somewhat lower percentage for the latter

These figures are not surprising considering that "sentencing courts remain obligated to calculate and consider the appropriate guidelines range" (see United States v. Ventura, 481 F.3d 821, 823 (D.C. Cir. 2007)), and that the sentence must reflect the sentencing factors in 18 U.S.C. § 3553(a), which, as the Supreme Court noted in Rita, are factors that the Guidelines strive to reflect. Rita, 127 S. Ct. at 2464 (observing that the Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.").

Indeed, it is the practice of this Court always to consider the Guidelines range and generally to impose a sentence within the Guidelines range, absent adequate grounds for a departure under Section 5K of the Guidelines (most frequently, under § 5K1.1 for a defendant's substantial assistance in an investigation or prosecution) or some reason to find that the Guidelines range does not reflect the sentencing factors in § 3553(a). But it is an infrequent occurrence that this Court sentences outside the Guidelines range because one of the § 3553(a) factors is not reflected by the Guidelines range for the simple reason acknowledged in Rita -- the Guidelines are designed to reflect those factors, and, in this Court's view, based on a hard look at the Guidelines in dozens of post-Booker sentencings, the Guidelines typically achieve that goal.[6]

In light of the empirical data indicating that a clear majority of sentences fall within the Guidelines range, the legal precedent giving the Guidelines range a prominent role in determining

---

period appears to be due to the higher number of government sponsored downward departures, which rose to 41 percent. See Preliminary Fiscal Year 2007 Quarterly Data Report, Table 2.

[6] To be sure, the Court does not apply a legal presumption that the Guidelines sentence should apply -- a presumption prohibited by Rita. See 127 S. Ct. at 2465. Rather, the Court considers in each individual case whether the Guidelines range is consistent with the § 3553(a) factors and observes that, in the run of cases, it is.

-10-

the proper sentence, and this Court's own practice of giving some weight to the Guidelines range and often sentencing within that range, the Court concludes that application of the revised 2006 Guidelines, with its higher offense level calculation, instead of the 2003 Guidelines, would create a significant risk of a longer period of incarceration, and thus would violate the ex post facto clause. Therefore, pursuant to § 1B1.11(b)(1), the Court holds that defendant is entitled to resentencing based on an advisory Guidelines range determined under the Guidelines Manual in effect on the date that the offense was committed -- that is, the 2003 Guidelines.[7]

## CONCLUSION

For the foregoing reasons, the Court will grant the motion of defendant Restrepo-Suares for resentencing based on application of the 2003 Guidelines and will schedule a resentencing hearing at a time to be determined after the case is remanded to this Court by the D.C. Circuit. See Def.'s Mem. of Law (stating that defendant intends to "move in the Circuit Court for a remand and re-sentencing" if his § 2255 motion is granted). The Court makes no judgment at this time as to what the sentence imposed will be. The Court also will move forward with the sentencings of co-defendants Hernando Rendon Rivera and Villegas-Jaramillo applying the 2003 Guidelines to

---

[7] At a hearing last March pertaining to co-defendant Rendon Rivera, the government all but acceded to the view that the 2003 Guidelines should be applied, but urged the Court to depart upward on the ground that the 2006 Guidelines reflect a judgment by the Sentencing Commission that the reduction for a mitigating role in the offense should be smaller, especially where large quantities of drugs are involved. See United States v. Rendon Rivera, No. 04-34-4, Preliminary Tr. ("Prelim. Tr.") at 17 (Mar. 12, 2007). Put another way, in the government's view, the lower 2003 Guidelines range does not adequately reflect the "seriousness of the offense" as required by § 3553(a)(2)(A) because of the large quantity of drugs involved in this conspiracy offense. See Prelim. Tr. at 17. The Court does not, in this decision, express any opinion on the matter of an upward departure. It will consider whether an upward departure from the 2003 Guidelines range is appropriate at the time of each defendant's sentencing.

determine the advisory Guidelines range.  A separate order accompanies this memorandum opinion.

/s/
JOHN D. BATES
United States District Judge

Date:  October 15, 2007